UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| KEITH LEMONT FARMER, )<br>)<br>    Plaintiff, )<br>)<br>VS. )<br>)<br>SHAWN PHILLIPS, ET AL., )<br>)<br>    Defendants. ) | No. 19-1211-JDT-cgc |

ORDER DISMISSING CASE, DENYING ALL PENDING MOTIONS,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
NOTIFYING PLAINTIFF OF APPELLATE FILING FEE
AND NOTIFYING PLAINTIFF OF RESTRICTIONS UNDER 28 U.S.C. § 1915(g)

On September 18, 2019, Plaintiff Keith Lemont Farmer, who is incarcerated at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On October 2, 2019, the Court granted Farmer leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 8.)

The complaint concerns events that occurred while Farmer was previously incarcerated at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee. The Clerk shall record the Defendants as former NWCX Warden Shawn Phillips; NWCX Capt. Alan Petty; Jason Roger, identified as NWCX "Gang Staff," (ECF No. 1 at PageID 6); Sgt. Hagen, NWCX Disciplinary Board Chairperson; NWCX Corrections Officer Natasha Miller; David B. Abel of NWCX Internal Affairs; Johnthan Michael H. Vernon, whose position is not provided; NWCX Sgt. Stacy Leake; NWXC Lt. Arthur Lynch; Debra Johnson, a Tennessee Department of Correction (TDOC) "higher

level CA warden," (*id.* at PageID 5);[1] TDOC Commissioner Tony Parker; Jonathan Lebo, former Warden of the WTSP; Cpl. Perkin, NWCX Grievance Chairperson; Tennessee Governor William Byron Lee; and Lake County.[2] Plaintiff's 98-page complaint is extremely difficult to decipher because of the rambling nature of delivery. He appends to his complaint over 170 pages of exhibits, the contents of which do not lend clarity to his § 1983 claims. After careful review, however, the Court construes the complaint, as best it can, as raising the following claims:

(1) Failure of NWCX's inmate grievance procedure, (*see*, *e.g.*, ECF No. 1 at PageID 15-23, 25-27, 29, 33; ECF No. 1-1 at PageID 65-66; ECF No. 1-2 at PageID 87; ECF No. 1-5 at PageID 106-07; ECF No. 1-9 at PageID 143-46; ECF No. 1-12 at PageID 188-94; ECF No. 1-13 at PageID 195-209; ECF No. 1-14 at PageID 211-17; ECF No. 1-15 at PageID 218-24; ECF No. 1-19 at PageID 231-39; & ECF No. 1-21 at PageID 246);

(2) Wrongful investigation of Farmer by various NCWX personnel based on "false" disciplinary charges and reports against him, (*e.g.*, ECF No. 1 at PageID 6-11, 27-28, 39; ECF No. 1-1 at PageID 49-50; ECF No. 1-2 at PageID 80; ECF No. 1-11 at PageID 169-74, 178-86; ECF No. 1-19 at PageID 231-39; & ECF No. 1-20 at PageID 240-45);

(3) Retaliation against Farmer by various NCWX personnel in violation of his First Amendment rights for his filing of inmate grievances, (*e.g.*, ECF No. 1 at PageID 25, 28-29, 31-32, 34; ECF No. 1-1 at PageID 62, 65; ECF No. 1-2 at PageID 87-88; ECF No. 1-18 at PageID 230; & ECF No. 1-19 at PageID 231-39);

---

[1] Debra Johnson died on August 7, 2019. *See* Memphis Commercial Appeal (Aug. 9, 2019), https://www.commercialappeal.com; *see also* https://tn.gov/correction/sp/ correctional-administrator-debra-k-johnson.html.

[2] The Clerk is directed to MODIFY the docket to add Lake County as a named Defendant. (*See* ECF No. 1-2 at PageID 81-82.)

(4) Lack of access to the prison law library, (*e.g.*, ECF No. 1 at PageID 30; & ECF No. 1-19 at PageID 231-39);

(5) Wrongful disciplinary reports about Farmer's conduct by various NCWX personnel. His attachments to the complaint suggest that the conduct giving rise to the reports occurred on November 29, 2018, December 13, 2018, March 23, 2019, and April 18, 2019, (*e.g.*, ECF No. 1 at PageID 6-11, 29, 36-37, 39; ECF No. 1-1 at PageID 51, 57; ECF No. 1-2 at PageID 81; ECF No. 1-3 at PageID 101-02; ECF No. 1-10 at PageID 160-63; ECF No. 1-11 at PageID 164-68, 175-77; ECF No. 1-16 at PageID 225-27; & ECF No. 1-21 at PageID 247-48);

(6) Wrongful placement of Farmer in segregation at NWCX, pending disciplinary hearings, (*e.g.*, ECF No. 1 at PageID 7-8, 12, 15, 19, 27);

(7) NWCX's violation of various TDOC policies, (*e.g., id.* at PageID 9, 15, 17-18, 23-26, 26-29; ECF No. 1-1 at PageID 50; ECF No. 1-2 at PageID 84-85, 87, 90-92; & ECF No. 1-19 at PageID 231-39);

(8) Excessive risk to inmate health and safety from unspecified acts or conditions at the NWCX, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, (*e.g.*, ECF No. 1 at PageID 13-14; & ECF No. 1-2 at PageID 85-86);

(9) Farmer's loss of prison employment, or the reclassification of his salary grade, (*e.g.*, ECF No. 1-1 at PageID 47-48);

(10) Mis-classification of Farmer's designated placement "site[s]" or "annex[es]" at NWCX, (*e.g.*, ECF No. 1-19 at PageID 238);

(11) Supervisory liability of NWCX personnel, (*e.g.*, ECF No. 1 at PageID 30, 40-42); and

(12) Lake County's liability for the conduct of NWCX personnel actions with regard to Farmer, (*e.g.*, ECF No. 1-2 at PageID 82).

Farmer contends that he has endured "pain and suffering." (*Id.* at PageID 42.) He seeks compensatory and punitive damages. (*Id.* at PageID 41-42.) He requests "$300,000 per claimant," "$1,000,000 per occurrence," and other dollar amounts whose bases and totals are vague, indeterminate and/or inconsistent. (*Id.* at PageID 44; ECF No. 1-2 at PageID 80, 83-86, 90.) He also seeks "full total amount $17,100 & $2,000 each day held in isolated & hostile environment on behalf of wrongfully transferring Plaintiff to WTSP as attempt to force him in SMU program." (ECF No. 1-1 at PageID 45; ECF No. 1-19 at PageID 231-39.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make

4

a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Farmer filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Farmer sues the Defendants in both their official and individual capacities. (ECF No. 1 at PageID 1, 4-5, 40-41; ECF No. 1-1 at PageID 45-46, 48-49, 54, 61, 68; ECF No. 1-2 at PageID 80-81, 90.) Because all of the Defendants were, at the relevant time, employed by the TDOC, the official capacity claims are treated as claims against the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Farmer, however, does not state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution

5

provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Farmer also appears to contend that Lake County may be held liable for the actions of the Defendants. (ECF No. 1-2 at PageID 81-82.) However, he sues only NWCX and TDOC Defendants. The mere fact that the NWCX is located in Lake County does not give the County any authority to control the actions of the State employees working at the prison. Lake County therefore cannot be held liable for any unconstitutional conduct committed by NWXC or TDOC personnel at that facility.

With respect to Farmer's supervisory liability allegations, (*e.g.*, ECF No. 1 at PageID 30, 40-42), "[g]overnment officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each

6

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). While Farmer repeatedly peppers his complaint with references to various individual Defendants' names, he in no measure makes out a supervisory liability claim against any of them. There are no coherent allegations discernible from the face of the complaint that one or more individual Defendants implicitly authorized, approved, or knowingly acquiesced in conduct that was unconstitutional. *See Bellamy*, 729 F.2d at 421.

Farmer also seems to allege a failure of NWCX's inmate grievance procedure. (*E.g.*, ECF No. 1 at PageID 15-23, 25-27, 29, 33; ECF No. 1-1 at PageID 65-66; & ECF No. 1-2 at PageID 87). However, "[t]here is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir.

7

2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).  A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate.  *Id.*  "[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures."  *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  Therefore, Farmer allegations concerning the adequacy of NWCX's grievance procedure fail to state a claim.

Farmer alleges that the NWCX Defendants retaliated against him in violation of his First Amendment rights because he filed prison grievances, (*e.g.*, ECF No. 1 at PageID 25, 28-29, 31-32, 34; ECF No. 1-1 at PageID 62, 65; ECF No. 1-2 at PageID 87-88), but he has not identified any adverse action taken against him that was causally connected to his grievance filing.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (a claim of retaliation has three elements:  (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) ("[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct") (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Farmer's retaliation claim also fails to state a claim on which relief may be granted.

Although Farmer seems to allege that NWCX personnel improperly investigated him based on "false" disciplinary charges, (*e.g.*, ECF No. 1 at PageID 6-11, 27-28, 36-37, 39; ECF No. 1-1 at PageID 49-51, 57; ECF No. 1-2 at PageID 80-81), a prisoner does not have a due process right to be free of false disciplinary charges.  *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL

348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)).  Furthermore, Farmer cannot obtain money damages in this § 1983 action for any allegedly wrongful conviction because success on his claim in this case "would necessarily demonstrate the invalidity" of that disciplinary conviction. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis omitted); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  Farmer fails to state a claim for relief with respect to false disciplinary charges.

Farmer's allegations concerning lack of access to the NWCX law library, (*e.g.*, ECF No. 1 at PageID 30), also do not state a cognizable claim.  Prisoners do retain a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)).  That right "extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X*, 175 F.3d at 391.  To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds*, 430 U.S. at 828.  To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim."  *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.  In addition, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.  To state a claim that the defendants interfered with his right to access the court, Plaintiff must "show that the defendants have scuttled

9

his pursuit of a 'nonfrivolous, arguable' claim." *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (quoting *Christopher*, 536 U.S. at 415). Farmer's vague and generalized statement that Defendants "denied access to law library which denied access to court," (ECF No. 1 at PageID 30), is insufficient.

Farmer's allegation that NCWX wrongfully placed him in segregation pending disciplinary hearings does not set forth an actionable claim. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison restriction does not give rise to a protected liberty interest unless the restriction imposed constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Restrictions such as confinement to administrative segregation or punitive segregation, the loss of package privileges, fines, and restitution generally do not constitute an atypical and significant hardship in the context of prison life. *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). An increased security classification also does not constitute an atypical and significant hardship. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Sandin*, 515 U.S. at 484) Farmer does not state how long he was held in segregation and does not allege that he was actually harmed by any of the conditions in the segregation unit. *See, e.g.*, *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (fourteen months of segregation were not actionable). He has no colorable claim for wrongful segregation while incarcerated.

Farmer's contention that NWCX violated one or more TDOC policies – none of which he identifies or describes in a consistent manner, (*e.g.*, ECF No. 1 at PageID 9, 15, 17-18, 23-26, 26-29; ECF No. 1-1 at PageID 50; ECF No.1-2 at PageID 84-85, 87, 90-92) – does not state a claim for relief.  An inmate's allegation that a correctional facility defendant failed to follow TDOC administrative policies governing disciplinary proceedings does not, in and of itself, rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  After *Sandin*, it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause.  *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)).  "A state has no federal due process obligation to follow all of its grievance procedures."  *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).  Section 1983 therefore does not provide a remedy for violations of state laws or regulations.  *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate.").  Moreover, the violation of a prison regulation is not actionable under § 1983.  *See Storm v. Swiger*, No. 4:07-cv-2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (citing *Levine*, 986 F.2d at 1515).  For these reasons, Farmer's random citations to TDOC policies are many in number but lacking as bases for relief.

Farmer's scattershot strategy with respect to health and safety risks is similarly unavailing.  He vaguely suggests excessive risk to unidentified NWCX inmates' health and safety from unspecified acts or conditions, in violation of the Eighth Amendment's prohibition on cruel and

11

unusual punishment, (*e.g.*, ECF No. 1 at PageID 13-14; ECF No. 1-2 at PageID 85-86). To the extent he alleges a deliberate indifference claim, his allegation arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38. Farmer's vague and cursory allegations of some sort of hypothetical risk of danger to his safety are insufficient to state an Eighth Amendment claim. *See Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001).

The Court liberally construes Farmer's allegation of "termination/separation of (an) employee from his/her position for the disciplinary reasons," (ECF No. 1 at PageID 47), as a claim about loss, or reclassification of the pay grade, of Farmer's prison employment. However, he has no Fourteenth Amendment property or liberty interest in his job. The loss of a prison job or the ability to participate in rehabilitative or educational programs does not violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally, . . . deprivations of this kind simply are not punishments. We would have to wrench the Eighth Amendment from its language and history to hold that delay

of these desirable aids to rehabilitation violates the Constitution."); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no property or liberty interest in prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("It is well established, however, that no prisoner has a constitutional right to a particular job or to any job."). Farmer has failed to state a claim for relief based on a loss of, or change in, his prison job.

The Court again affords Farmer a liberal construction of his suggestion that NWCX misclassified his placement designation at or within the prison facility. He seems to suggest either that he should have been incarcerated at a different facility or that he should have been placed in a different section at NWCX. (ECF No. 1 at PageID 238-39.) These allegations do not support a claim for relief. Claims generally challenging classification procedures have no constitutional basis. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ; *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Simpson v. Johnson*, 770 F.2d 167, *1 (6th Cir. 1985) (unpublished). The Court does not have the authority to supervise classification and housing assignment of inmates. An inmate does not have a protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976); *Sandin*, 515 U.S. at 484-87. Because "maintaining security, order, and discipline are essential goals of a corrections system," prison officials are given wide latitude in the adoption and application of prison policies, and courts have deferred to judgments of prison officials in upholding these regulations." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011).

Of final note, Farmer has named WTSP Warden Jonathan Lebo as a Defendant. (ECF No. 1 at PageID 5.) After exhaustive review of Farmer's 98-page complaint and 170 pages of exhibits,

13

the Court cannot find in them any allegations or facts as to Lebo, even with a liberal construction of Plaintiff's submissions. Rather, his claims appear to arise exclusively from his period of incarceration at the NWCX, not the WTSP.[3] In any event, a plaintiff must allege personal involvement in unconstitutional conduct for individual liability. *Iqbal*, 556 U.S. at 676; *Simpson*, 79 F. App'x at 120. Farmer therefore fails to state a claim on which relief may be granted against Lebo.

For all of the foregoing reasons, Farmer's complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe

---

[3] The only reference in the complaint to events occurring at the WTSP is Farmer's assertion that he submitted a grievance to Sgt. Kristi Parker, the WTSP Grievance Chairperson, and that she violated his due process rights, apparently by allegedly failing to follow TDOC policy. (ECF No. 1 at PageID 6.) However, Parker is not specifically named as a defendant. Even if she were, as stated above, there is no constitutional right to an adequate grievance procedure and the mere failure to follow prison policies is not a constitutional violation.

the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

For all of the foregoing reasons, this case is DISMISSED with prejudice in its entirety for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED. Because the case is being dismissed, all other pending motions are DENIED. (ECF Nos. 3, 7, 10, 11, & 14 through 25.) The Clerk also shall terminate the motion for leave to proceed *in forma pauperis*, (ECF No. 6), as it was granted on October 2, 2019.

Pursuant to 28 U.S.C. §1915(a)(3) and Federal Rule of Appellate Procedure 24(a), the Court must also consider whether an appeal by Farmer in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED that any appeal in this matter by Farmer would not be taken in good faith.

If Farmer nevertheless appeals the dismissal of this case, the certification that an appeal is not taken in good faith will not affect his ability to pay the $505 appellate filing fee using the PLRA's installment procedures, 28 U.S.C. §§ 1915(a)-(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA. Therefore, Farmer is instructed that if he files a notice of appeal and wishes to use the installment method for paying the appellate filing fee, he must comply with the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account statement for the last six months.

15

Finally, for analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Farmer, this is the third dismissal of one of his cases as frivolous or for failure to state a claim.[4] This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 575 U.S. 532, 135 S. Ct. 1759, 1763-64 (2015).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Consequently, Farmer is warned that he will be barred from filing any further actions *in forma pauperis* while he is a prisoner within the meaning of 28 U.S.C. § 1915(h) unless he is in imminent danger of serious physical injury. If any new civil action filed by Farmer is not accompanied by the entire $400 civil filing fee, the complaint must contain allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury. If the new complaint does not sufficiently allege imminent danger, it will be dismissed without prejudice; Farmer would then have an opportunity to file, within 28 days, a motion to re-open the case accompanied by the entire civil filing fee.

IT IS SO ORDERED.

    s/ **James D. Todd**
    JAMES D. TODD
    UNITED STATES DISTRICT JUDGE

---

[4] Farmer previously filed *Farmer v. Davidson Cnty. Sheriff's Dep't, et al.*, No. 3:12-cv-00434 (M.D. Tenn. May 9, 2012) (dismissed for failure to state a claim), and *Farmer v. Munkeboe, et al.*, No. 3:17-cv-01356 (M.D. Tenn. May 29, 2018) (dismissed for failure to state a claim).